# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 4:19-cr-0077-SDJ-KPJ |
| | § | |
| WILLIAM RANDALL BRANNAN | § | |
| | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant William Randall Brannan's ("Brannan") Motion to Suppress Statements. (Dkt. #56). The United States filed its response in opposition (Dkt. #65), and, on February 6, 2020, the Court held a hearing on the motion. Having considered the motion, the government's response, and the arguments and evidence presented at the hearing, the Court finds that the motion should be **DENIED**.

## BACKGROUND

On February 28, 2019, Brannan was arrested by the Arlington Police Department after a high-speed chase. The Arlington Police Department initiated pursuit of Brannan in order to serve multiple state warrants: for aggravated assault and for unlawful possession of a firearm by a felon. Following his arrest, Brannan was held in jail in Tarrant County, Texas. On March 1, 2019, the day after he was arrested, Brannan was interviewed by officers with the sheriff's office of Cooke County, Texas, including Officer Bryce Kennedy, a Task Force Officer for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").

Brannan was taken to an interrogation room with three officers, including Officer Kennedy, and interviewed for about thirty minutes. Officer Kennedy identified himself as an ATF Task Force Officer, and Brannan acknowledged at the hearing on his motion to suppress that he knew one of

1

the officers interviewing him on March 1, 2019, was "federal." Brannan was not handcuffed or otherwise restrained during the interview. The last approximately fifteen minutes of the interview was filmed. Officer Kennedy testified that, prior to filming the interview, the officers spoke to Brannan for approximately seven to ten minutes, explaining the offenses Brannan was suspected of committing, the witnesses with whom the officers had spoken, and the information and evidence they had collected, in an attempt to contextualize the interview and encourage candor. The officers then set up the video camera and began filming the interview. Brannan was read his *Miranda* rights,[1] was aware that he was being recorded, and agreed to speak with the officers. Brannan went on to confess to the actions that are the predicate of the charges brought against him by the government.

  Brannan now seeks to suppress his video-recorded confession, claiming that the confession is false, and was only given by him based on allegedly false promises made to Brannan by Officer Kennedy and the other interviewing officers. Specifically, Brannan testified that the officers instructed him to give an untruthful confession on the video, in return for which he would be released from jail, permitted to become a confidential informant for law enforcement, and ultimately have any charges against him dismissed. Brannan further asserted that during the first ten minutes of the interview, before the recording began, the officers told Brannan exactly what to say when he was filmed. Thus, according to Brannan, the entire content of his recorded statement was allegedly provided to him by the officers, which Brannan then memorized and repeated back on the video. Because he was purportedly duped into giving a false confession, consisting entirely

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

of words effectively put in his mouth by the interviewing officers, Brannan argues that his confession was involuntary and should be suppressed.

## LEGAL STANDARD

The Fifth Amendment protects an individual's right against self-incrimination. "*Miranda,* based on the fifth amendment right against compulsory self-incrimination, holds that incriminating statements made during custodial interrogations are not admissible unless the suspect is informed of his rights and freely decides to forego them." *United States v. McClure*, 786 F.2d 1286, 1288 (5th Cir. 1986); *see also United States v. Bengivenga,* 845 F.2d 593, 595 (5th Cir.1988) ("*Miranda* warnings must be administered prior to 'custodial interrogation.'"). When voluntariness is at issue, the government must prove that an individual's waiver of *Miranda* rights was voluntary and that the individual's statement was given voluntarily by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

> To determine if a waiver was voluntary has two dimensions:
>
> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*United States v. Guanespen-Portillo*, 514 F.3d 393, 403–05 (5th Cir. 2008) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). "Whether a waiver of the Fifth Amendment privilege is voluntary depends on 'the absence of police overreaching, not on 'free choice' in any broader sense of the word.'" *Id.* (quoting *Connelly*, 479 U.S. at 170). The voluntariness determination is made "on a case-by-case basis and is viewed under the totality of

the circumstances surrounding the interrogation." *United States v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005).

Turning to the voluntariness of the statement itself, under 18 U.S.C. § 3501(b) courts should again consider "the totality of the circumstances" to assess voluntariness. *United States v. Cantu-Ramirez*, 669 F.3d 619, 625 (5th Cir. 2012). Section 3501(b) specifically instructs that the following circumstances surrounding the giving of the confession should be considered:

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment,
>
> (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession,
>
> (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him,
>
> (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and
>
> (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b). The presence or absence of any of the above-mentioned factors to be taken into consideration by the court need not be conclusive on the issue of voluntariness of the confession. *Id.*; *see also Cantu-Ramirez*, 669 F.3d at 624 (*citing United States v. Seale,* 600 F.3d 473, 482 (5th Cir.2010) ("Whether a confession is admissible or not turns on whether it was made voluntarily.").

## ANALYSIS

The government has met its burden and shown by a preponderance of the evidence that both Brannan's waiver of his rights and his statement were given voluntarily. Brannan was interviewed the day after his arrest. He does not assert that he was threatened or coerced in any

way, and the video of his confession shows that Brannan was not handcuffed or restrained during the interview. At the outset of the video Brannan is given his *Miranda* warnings. Prior to his confession, Brannan was also informed of the state charges on which he was suspected, aggravated assault and unlawful possession of a firearm by a felon. Brannan was also advised of his right to the assistance of counsel, and the officers made clear to Brannan that counsel would be provided to him if he was unable to afford a lawyer.

Officer Kennedy testified that neither he nor any of the other interviewing officers made any promises to Brannan in return for his confession, much less a promise that, in return for an untruthful confession to committing violent crimes, Brannan would be set free and any charges against him dismissed. Indeed, Officer Kennedy testified that he has no authority to make such promises. To the contrary, Officer Kennedy testified that he understood Brannan's confession to be genuine.

Brannan's contrary assertion, that his confession was entirely fabricated by the interviewing officers and then memorized and repeated by Brannan, is devoid of credibility. In this regard, Brannan's testimony at the motion to suppress hearing was riddled with inconsistencies, fanciful, and unpersuasive.

To begin with, Brannan testified first that the recorded statement was entirely false and had been provided to him in total by the interviewing officers. However, as the recording of Brannan's confession was played back to him at the hearing, Brannan step-by-step acknowledged the truthfulness of various statements he made in his interview and eventually recanted his earlier position, stating that portions of his statement were "scripted" by the officers, while other parts were "unscripted," contradicting his own earlier testimony. Brannan went on to acknowledge

before the Court that various aspects of his confession were accurate, including: (1) that Brannan does know Jeremiah and Christian Woolard, two individuals discussed in his statement; (2) that Brannan also knows a young woman named Makayla and did claim her as a dependent on his tax return, as was also referenced in his statement; and (3) that Brannan did possess a 1911 Springfield pistol and a holster, and that he threw the pistol on the floor of his truck when he surrendered to the police, again as admitted in his confession.

The context and circumstances of the video-recorded confession also demonstrate that Brannan's far-fetched version of events cannot be accurate. In the fifteen-minute confession video, Brannan does not use any notes, receive any prompts from the officers, or otherwise appear to be recalling any scripted material allegedly provided by the officers. To the contrary, during his confession Brannan displays multiple outbursts of emotion, and at times searches for words or names that he may not easily remember. In order to find Brannan's post hoc version of the events surrounding his confession credible, one must credit that during a ten-minute conversation with the officers just before the recorded confession, Brannan memorized a fifteen-minute soliloquy of false, violent crimes provided by the officers, and then repeated it back to them on the video with no notes or prompts, including multiple details regarding locations, suppliers of drugs, various drug pricing schedules, various altercations, and multiple locations of where he discharged a firearm, complete with emotions and facial expressions. This version of events is both highly implausible and contradicted by Brannan's own inconsistencies regarding the exact nature of his recorded statement.

Under the circumstances, Brannan's related testimony that his allegedly false confession was based on false promises made by the interviewing officers also lacks credibility. Moreover,

even if some kind of offer of leniency was made to Brannan by the officers, and there is no credible evidence to suggest such an offer was made, such an offer would not, standing alone, support the suppression of Brannan's confession. *See United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995) (promise of leniency does not in and of itself make a confession involuntary); *See United States v. Lewis*, 24 F.3d 79, 82 (10th Cir. 1994) (limited assurances or promises to make cooperation known did not make a confession involuntary). Nor would any such alleged promises undo the prophylactic effect of the *Miranda* warning given to and waived by Brannan, an individual who is familiar with the criminal justice system. Brannan acknowledged that he has had multiple prior convictions, both state and federal, for possession of methamphetamine and possession of a firearm as a felon, and at least one prior conviction of aggravated assault. Having interacted with law enforcement on many occasions, Brannan has repeatedly exercised his rights and has chosen to waive or not waive his *Miranda* rights at various times.

In short, Brannan failed to present any credible evidence of deception, coercion, or intimidation. As his video recorded statement demonstrates, Brannan was fully aware of and stated he understood his rights, this was never controverted, and he waived them when he knowingly chose to speak with the interviewing officers. Brannan did so fully understanding the consequences of his actions.

Likewise, the Court concludes that, based on the surrounding circumstances and the factors set forth in 18 U.S.C. § 3501(b), Brannan's statement was given voluntarily. First, at the time his confession was given, Brannan was in the custody of state authorities. Although the time elapsed between Brannan's arrest and his arraignment in state court is unclear, Brannan has not argued that this period involved any unreasonable delay. And it is undisputed that Brannan was interviewed

the day after his arrest, thus the circumstances do not suggest any unnecessary delay, much less any delay based on improper collaboration between federal and local law enforcement officers. *See United States v. Alvarez-Sanchez*, 511 U.S. 350, 359-60, 114 S.Ct. 1599, 1604, 128 L.Ed.2d 319 (1994). In any event, because Brannan was arrested and held on state charges and by local authorities at the time of the interview, the delay provisions of 18 U.S.C. § 3501 are not triggered. As the Supreme Court has explained, "[a]s long as a person is arrested and held only on state charges by state or local authorities, the provisions of § 3501(c) are not triggered." *Alvarez-Sanchez*, 511 U.S. at 358; *see also id.* (stating that "there can be no 'delay' in bringing a person before a federal magistrate until, at a minimum, there is some obligation to bring the person before such a judicial officer in the first place. Plainly, a duty to present a person to a federal magistrate does not arise until the person has been arrested for a *federal* offense.").

Second, the officers informed Brannan of the state charges he faced for aggravated assault and unlawful possession of a firearm by a felon.[2] At the motion to suppress hearing, Brannan confirmed that he understood the nature of the charges against him when he was interviewed by the officers, including an officer Brannan confirms identified himself as "federal." Further, Brannan inquired whether the charges against him were federal when he was arrested, and he acknowledged at the hearing that, as a general matter, he was aware that he could ultimately face federal charges based on the conduct underlying the state offenses he was suspected of committing.

---

[2] Although Brannan has attempted to muddy the water by stating that he was solely aware of the state charges, this does not alter the voluntariness of his confession. The fact that federal charges could be brought against him was known to Brannan, evidenced through his personal experience, having a previous state conviction become a separate federal case and eventual conviction, and through his acknowledgement that one of the agents questioning him was federal. *See United States v. Contreras*, 755 F.2d 733, 737 (9th Cir. 1985) (holding that federal agents providing *Miranda* warnings put defendants on notice that their state immunity did not apply to any statements they were about to make).

There is nothing to suggest that Brannan did not fully understand the nature of the offense of which he was charged or of which he was suspected.

Third, Brannan was advised that he was not required to make any statement and that any statements he made could be used against him. Fourth, Brannan was advised prior to questioning of his right to assistance of counsel. Fifth, although Brannan was without counsel at the time of the interview, the officers made clear he could have counsel at any time and that counsel would be provided if Brannan was unable to afford a lawyer.

The totality of the circumstances show that Brannan was not in any way coerced or deceived into making the recorded statement at issue. There is no credible evidence that would indicate otherwise. The government has met its burden to show by a preponderance of the evidence that Brannan waived his rights and gave his confession voluntarily.

## CONCLUSION

Having considered all the evidence, arguments of counsel, and the applicable law, the Court finds that Defendant Brannan's waiver of his *Miranda* rights was voluntary and that his statement was also voluntary. It is, therefore, **ORDERED** that Defendant's Motion to Suppress Statements (Dkt. #56) is **DENIED**.

**So ORDERED and SIGNED this 13th day of February, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE